UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COOPER CONLEY, on behalf of himself and all others similarly situated, | Case No.: |
| PLAINTIFF, | **CLASS ACTION COMPLAINT** |
| - AGAINST - | |
| FORDHAM UNIVERSITY, | **JURY TRIAL DEMANDED** |
| DEFENDANT. | |

Plaintiff Cooper Conley ("Plaintiff"), individually and on behalf of all other similarly situated people, by and through the undersigned counsel, brings this class action against Defendant Fordham University ("Fordham," the "University," or "Defendant"), and alleges as follows based upon information and belief, except as to the allegations specifically pertaining to him, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      This is a class action lawsuit on behalf of all persons who paid tuition and/or fees to attend Fordham University for in-person and on-campus services, instruction, and access for the semesters or terms affected by Coronavirus Disease 2019 ("COVID-19"), including the Spring 2020 semester, and had their course work moved to online only learning and failed to receive the services for which they paid for.

2.      Higher education is no different from any other industry in as much as consumers (i.e. students) have the ability to shop between different educational products offered by

competitive institutions before ultimately purchasing the product that is right for them.

3.      In the open marketplace, colleges and universities offer educational products without access to a campus or in-person community, while others offer an educational product with access to a varied suite of services, activities, facilities and experiences.

4.      Students, like Plaintiff, were required to pay tuition for the Spring 2020 semester to attend Fordham's physical campus, including a typical tuition price of approximately $26,490.00 for undergraduate students and between $11,000.00 and $30,000.00 for graduate programs. Plaintiff was required to pay various fees including a general FCRH fee, a technology access fee, and a lab fee. Access to facilities such as the fitness center was available to students who paid tuition and fees.[1]

5.      Plaintiff did not sign up for, enroll at, apply for, register for classes at, or pay monies to receive online-only instruction – which is traditionally a few hundred dollars less per credit hour than campus-based programs.

6.      Throughout application, admission, registration, and payment processes, Plaintiff expected to receive access to in-person, on-campus educational services.

7.      Throughout application, admission, registration, and payment processes for its students enrolled during the Spring 2020 semester, Fordham intended to and expected to provide access to in-person, on-campus educational services.

8.      Fordham and its students had a meeting of the minds that Plaintiff would pay tuition and Mandatory Fees and Fordham would provide three fundamental services: (1) instruction, (2) progress toward a degree, and (3) access to campus, its facilities, technologies, classroom instruction, and other campus-based services.

---

[1] https://www.fordham.edu/student-life/safety-health-and-wellness/fitness-and-recreation/fitness-and-recreation-centers/membership-information/ (last accessed July 11, 2023).

9.      During a material portion of the Spring 2020 semester, Fordham failed to provide access to campus, its facilities, technologies, classroom instruction, and other campus-based services.

10.     In a nearly identical case, *Rynasko v. New York Univ.*, 63 F.4th 186 (2nd Cir. 2023), the Second Circuit found that based on similar policy documents that a reasonable person could find, by the students' payments of tuition and fees the university would provide in-person services and on-campus access. Id. at 199 ("A factfinder could reasonably determine that NYU, in light of its representations and longstanding history, impliedly agreed that in-person courses, services, activities, and facilities would comprise a substantial part of the NYU educational experience for which students contracted."). The Second Circuit's reading of *Rynasko* is in line with other circuits around the country. *See Shaffer v. Geo. Wash. Univ.*, 27 F.4th 754, 763-765 (D.C. Cir. 2022); *Gociman v. Loyola Univ. of Chi.*, 41. F.4th 873, 884-885 (7th Cir. 2022); *Jones v. Adm'rs of the Tulane Educ. Fund*, 51 F.4th 101, 114-116 (5th Cir. 2022).

11.     In finding the intent of the parties to be bound the Second Circuit identified four categories of information relevant to the expectations of the parties and their intent, when the contract was formed: (1) the Course Catalog which identified the location of class, (2) marketing materials that described the benefit of attending college in New York City, (3) the benefits of its on-campus services and facilities; and (3) the university's past course of conduct was instructive as to the university's intent to provide in-person instruction and services. *See Rynasko*, 63 F.4th 198.

12.     Fordham made similar representations through its documents and its past conduct as identified by the Second Circuit. For example, through its course search function classes were listed by campus, building and room, as opposed to virtual or online. Based on these designations

by Fordham the parties understood the classes for which Plaintiff registered were to be provided on the specific campus, building and room identified.

13.    Fordham's marketing materials highlighted the benefit of being in New York City. For example, its mission statement provides "As home to people from all over the globe, as a center for international business, communication, diplomacy, the arts and sciences, New York City provides Fordham with a special kind of classroom. Its unparalleled resources shape and enhance Fordham's professional and undergraduate programs."[2] Further Plaintiff and members of the class received acceptance letters that further highlighted its location as a benefit, stating "as the Jesuit University of New York, Fordham finds its vibrancy in the distinctive combination of our rigorous academic program, engaged professors and talented students, and our location in a world capital. You are invited to join this community and all that it has to offer." Fordham further promotes its ideal location and the benefits of New York through its website.[3]

14.    Additionally, through its various policy documents Fordham highlights the benefits of its on-campus services and facilities. Fordham states on their student involvement page "getting involved in clubs and organizations, participating in leadership initiatives, [and] volunteering as part of a service project" are all ways to getting involved.[4]Additionally, the Rosehill Campus had over 125 student organizations that "provides students with meaningful interactions outside of the classroom that connect them with their peers and with other members of the University community."[5] Fordham also stated one of the "best aspects of a great college experience is a strong

---

[2]https://web.archive.org/web/20180331154205/https://www.fordham.edu/info/20057/about/2997/mission_stat ement (last accessed July 11, 2023).
[3] https://www.fordham.edu/about/campuses/lincoln-center-campus/ (last accessed July 11, 2023); https://www.fordham.edu/about/campuses/rose-hill-campus/ (last accessed July 11, 2023).
[4]https://web.archive.org/web/20160823211158/http://www.fordham.edu/info/24257/student_involvement_and _leadership (last accessed July 11, 2023).
[5]https://web.archive.org/web/20160716152043/http://www.fordham.edu/info/21466/student_organizations/309 1/rose_hill (last accessed July 11, 2023).

sense of community, plenty of school spirit and tradition." [6] Fordham further advertised on their website over 170 years of traditions such as the President's Ball, Winter Ball, and  Senior Week as well as an "extraordinary variety of lectures, performances, exhibitions, concerts, service outings, film screenings, spiritual gatherings and more." [7]

15.    Finally, since its inception in 1841 Fordham has always provided in-person and on-campus services to its student body, except for the Spring 2020 semester. This practice supports Fordham's intent to be bound to provide in-person and on campus services, during the Spring 2020 semester.

16.    During the Spring 2020 Fordham provided instruction and progress toward a degree, but failed to deliver on the third fundamental consideration, access to campus, its facilities, technologies, and classroom instruction.

17.    Therefore, Fordham has breached its agreement with its students like Plaintiff by (1) failing to provide students with on-campus, in-person services like access to campus, its labs, its libraries, its technologies, classroom instruction, and all the other specific campus-based services, and (2) retaining the full amount of tuition and fees paid by students despite the above.

18.    Fordham has not refunded any amount of the tuition or any of the Mandatory Fee, even though it canceled in-person classes on or about March 9, 2020, transitioned to online only learning, and cancelled in-person events and activities.

19.    Because of Fordham's response to the COVID-19 pandemic, on or about March 9, 2020, it also stopped providing services or facilities the Mandatory Fee was intended to cover.

20.     Fordham's failure to provide the services for which tuition and the Mandatory Fees

[6]https://web.archive.org/web/20160729234637/http://www.fordham.edu/info/21408/events_and_activities (last accessed July 11, 2023).
[7] Id.

were intended to cover since approximately March 9, 2020, through the end of the semester constitutes a breach of the contracts between Fordham and Plaintiff and the members of the Class and is unjust.

21.    Plaintiff and the members of the Class have all bargained for, contracted for, paid for, and reasonably expected to receive on-campus and in-person educational services and access, with all the appurtenant benefits offered by Fordham. Instead, students like Plaintiff were provided a materially different product, which constitutes a breach of the contracts they entered into with the University.

22.    In the alternative, it was unjust and inequitable for Fordham to (1) promote, market, and tout its services and not provide them, (2) to earn money when students expected to receive those services and gain the financial benefit of not providing those services, and (3) to otherwise gain the benefit associated with reduced services without passing those savings onto class members.

23.    As to the Mandatory Fees, Plaintiff and the Class have paid fees for services and facilities that were simply not provided. Specifically, Fordham represents on its website Fordham College at Rose Hill and Lincoln Center students would need to pay a general fee and a technology fee per term as well as varying lab fees.[8]

24.    Upon information and belief, these fees were used to support in-person services and on-campus access to facilities and technologies.

25.    Plaintiff did not receive those things for a material portion of the Spring 2020 semester because campus was closed, and all educational services ceased.

---

[8]https://web.archive.org/web/20150929070628/http://www.fordham.edu/info/21259/tuition_and_fees/5705/fordham_college_at_rose_hill and;
https://web.archive.org/web/20150907100809/http://www.fordham.edu/info/21259/tuition_and_fees/5706/fordham_college_at_lincoln_center

26.     This failure also constitutes a breach of the contracts as to tuition and fees – agreed to by Plaintiff and Fordham.

27.     Fordham has been unjustly enriched by accepting pre-payment of such tuition and fees without providing the services.

28.     Plaintiff seeks, for himself and Class members, the University's disgorgement and return of the pro-rated portion of its tuition and Mandatory Fees, proportionate to the amount of time in the respective semesters when Fordham closed and switched to online only learning. The return of such amounts would compensate Plaintiff and the Class members for damages sustained by way of Defendant's breach.

## PARTIES

29.     Plaintiff Cooper Conley was an undergraduate student during the Spring 2020 semester. In the Spring 2020 semester, Fordham charged Plaintiff approximately $26,490.00 in tuition, and $455.50 in Mandatory Fees, including a Res Hall Communication Fee RH of $37.50, a General Fee FCRH of $133.50, a Lab Fee FC of $37.50, and a Technology Access Fee of $247.00.

30.     Plaintiff Conley is a resident of Boulder, Colorado.

31.     Plaintiff Conley paid tuition and Mandatory Fees and reasonably expected to receive in-person educational services and access. Plaintiff Conley has not been provided a pro-rated refund of the tuition for his in-person classes that were discontinued and moved online, access to campus restricted or eliminated, or the Mandatory Fee he paid after Fordham's facilities were closed and events were cancelled.

32.     Defendant Fordham University is a private university in New York, New York.

33.     Fordham was founded in 1841 and the University offers numerous major fields for

undergraduate students, as well as numerous graduate programs.

34.    Defendant's undergraduate and graduate programs includes students from many, if not all, of the states in the country. Defendant is a citizen of New York.

## JURISDICTION AND VENUE

35.    This Court has jurisdiction over the action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceed $5,000,000 exclusive of interest and costs. In data reported by Fordham approximately 60% of first year students were non-New York State residents during 2020. Upon information and belief similar rates of residency apply to the entire student population for the 2020 year.

36.    This Court has personal jurisdiction over Defendant because it maintains its principal place of business in this District.

37.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant resides in this District.

## FACTUAL ALLEGATIONS

38.    Plaintiff and Class Members paid tuition and Mandatory Fees to attend Fordham's Spring 2020 semester.

39.    The student-university relationship was formed via the application process (by which Plaintiff reviewed materials and selected Fordham), the admissions process (by which Fordham made an offer of admission), the enrollment process (by which Plaintiff accepted the offer of admission and took steps necessary to obtain good standing), the registration process (by which Plaintiff selected his courses for the semester), and the payment process (by which Plaintiff

received and paid his tuition and fee bill).

40.    During each of those critical contract formation stages, Plaintiff understood that Fordham would provide instruction, progress toward a degree (if he followed and maintained good standing), and access to campus (including its labs, libraries, technologies, classroom instruction, campus services, and other in-person services).

41.    During each of those critical contract formation stages, Fordham through its official policy documents conveyed to Plaintiff and his fellow students that Fordham intended to provide and expected to provide access to campus – in addition to instruction and progress toward a degree.

42.    The Spring 2020 semester started on January 13, 2020, and ended on or around May 12, 2020.

43.    Tuition at Fordham was approximately $26,490.00 for undergraduate students and between $11,000.00 and $30,000.00 for graduate programs. Fordham College at Rose Hill and Lincoln Center students would need to pay a general fee and a technology fee per term as well as varying lab fees.

44.    Defendant priced the Mandatory Fees based on the amount of services that students like Plaintiff would receive via in-person access.

45.    Throughout March 2020, Fordham made public announcements adjusting educational services and opportunities that affected Plaintiff.

46.    Fordham did not hold any in-person classes from March 9, 2020, through the end of the semester for students.  All classes during the Spring 2020 semester after March 9, 2020, were offered in a remote online format with no in-person instruction or interaction.

47.    The services for which the Mandatory Fees were assessed were also terminated or cancelled at or about this time, such as access to Fordham's in-person services and on-campus

access to facilities and technologies.

48.    Upon information and belief, the general fee was used to provide and support campus-based services and access, the technology fee was used to provide and support campus-based technologies and the lab fees were used to provide and support various on campus laboratories and resources.

49.    As a result of Defendant's response to the Coronavirus, Plaintiff and the Class were denied access to such facilities, services, and technology despite paying the Mandatory Fees.

50.    Fordham has not provided reimbursement or refund information regarding tuition or the Mandatory Fee.

51.    Students attending Fordham's Spring 2020 semester did not choose to attend an online only institution, but instead were offered, paid for, and reasonably expected to receive Fordham's in-person educational programs and educational services. Students paid a premium for the in-person and on-campus services and access offered by Fordham. Other online-only options were available at a significantly lower price in the same marketplace.[9] For example, the State University of New York's online programs are significantly cheaper.[10]

52.    On its official website and in its official policy documents, Fordham markets the University's on-campus services and access as part of what students will receive when they pay

---

[9] Hanson, Melanie, "Cost of Online Education vs. Traditional Education," *Education Data Initiative*, August 18, 2021, accessed at https://educationdata.org/cost-of-online-education-vs-traditional-education. (private colleges charging an average of $58,560.00 for online degrees versus $148,800 for in-person degrees); Kerr, Emma, "What You'll Pay for an Online Bachelor's Degree," *U.S. News & World Report*, January 14, 2020, accessed at https://www.usnews.com/higher-education/online-education/articles/what-youll-pay-for-an-online-bachelors-degree. (finding $488 per online credit verse $1,240 per in-person credit); Jacob, Brian, *et al.*, "College as Country Club: Do Colleges Cater to Students' Preferences for Consumption?", *Journal of Labor Economics* 36, no. 2 (2018): 309-348, at p. 311; Matsuda, Kazuhisa, "Hedonic Prices for College Tuition: Best Value Colleges in the U.S.," August 2007, accessed at http://www.maxmatsuda.com/Papers/2007/Tuition%20Matsuda.pdf at p. 3 (Conducting a Hedonic Regression); Harford, Jon D. and Richard D. Marcus, "Tuition and U.S. Private College Characteristics: The Hedonic Approach," *Economics of Education Review* 5, no. 4 (1986): 415-430, at p. 422 (Conducting a Hedonic Regression); Dimkpah, Young O., *et al.*, "The Impact of College Quality on Tuition: A Hedonic Analysis," *Journal for Economic Educators* 4, no. 2 (Winter 2004), at pp. 3, 7.
[10] https://explore.suny.edu/content/tuition-financial-aid (last accessed July 11, 2023).

Fordham's tuition and fees. Additionally, these documents among others gave Plaintiff and class members the reasonable expectation of the services and access they would receive. In its mission statement Fordham markets the benefit of its in-person product including its location within in New York City, stating "As home to people from all over the globe, as a center for international business, communication, diplomacy, the arts and sciences, New York City provides Fordham with a special kind of classroom. Its unparalleled resources shape and enhance Fordham's professional and undergraduate programs."[11]

53.     Fordham further highlights the unique product that it offers students throughout other policy documents, including through its website stating "New York is your campus. Fordham is your school. Our residence halls are your home. The sense of community that shapes so much of your college experience starts from the moment you move in, meet your roommates for the first time, and figure out where to put your family photos."[12]

54.     Other official Fordham documents conveyed during the application, admission, enrollment, registration, and payment processes referenced "campus" whether by words, images, or likeness.

55.     Additionally, Defendant marketed and conveyed the in-person services and access as part of their educational product.

56.     Fordham uses its website, promotional materials, circulars, admission papers, catalogs, and publications to tout the benefit of being on campus and the education students will receive in its facilities. For example, on its website Fordham provides "College life is going to shape you in so many ways. Much of that growth will occur in the classroom; much of it, though,

---

[11]https://web.archive.org/web/20180331154205/https://www.fordham.edu/info/20057/about/2997/mission_statement (last accessed July 11, 2023).
[12] https://web.archive.org/web/20191015175405.https://www.fordham.edu/info/20421/living_on_campus (last accessed July 11, 2023).

comes from your engagement with the community and the people in it."[13] When describing the Rose Hill campus Fordham states "That intimate, small-class experience also opens you up to the life-changing resources that are all over the city. Biology students may do work at the New York Botanical Garden (or Fordham's own Calder Center research station, not far from the Bronx.) archaeology students may do research in Alaska and chemistry students at the Brookhaven National Laboratory." Further providing "You'll also get the kind of hands on experience that make you more than just another face of LinkedIn."[14] Fordham's website also states Rose Hill students can enjoy "a beautiful campus with expansive green spaces where you can study and reflect on your experiences, a modern library… an array of clubs an student organizations…[and] exposure to others who share your excitement of learning and who are seeking lifelong friendships."[15]

57.    As a result of COVID-19, the online-only learning options offered to Fordham's students were a materially different product than the Parties contracted for and reasonably expected to provide/receive. During the online portion of the Spring 2020 semesters, Fordham used programs by which previously recorded lectures were posted online for students to view on their own or by virtual Zoom meetings. Therefore, there was a lack of classroom interaction among teachers and students, and among students that was expected as per typical in-person learning settings.

58.    Access to facilities and activities, which were denied to Plaintiff and students, such as libraries, laboratories, computer labs, recitations, study rooms, campus centers, gyms, recreation

---

[13] https://web.archive.org/web/2019724021210/https://www.fordham.edu/info/20015/student_life (last accessed July 11, 2023).
[14] https://web.archive.org/web/20161219210519/http://www.fordham.edu/info/20309/undergraduate (last accessed July 11, 2023).
[15] https://web.archive.org/web/20190421042511/https://www.fordham.edu/info/20316/academics (last accessed July 11, 2023).

areas, athletic facilities are all part of the product for which Plaintiff paid a premium but did not receive.[16]

59.     Fordham priced the tuition and Mandatory Fees based on the in-person educational services and access it was providing on campus.

60.     Fordham has not made any refund of any portion of the tuition Plaintiff and the members of the Class paid for during the semester affected by Covid-19.

61.     Fordham has not refunded any portion of the Mandatory Fees it collected from Plaintiff and the members of the Class for the affected semester even though it closed or ceased operating the services and facilities for which the Mandatory Fees covered.

62.     Plaintiff and the Class members are therefore entitled to a pro-rated refund of the tuition and Mandatory Fee they paid for the Spring 2020 semester for the remaining days of that semester after classes moved from in-person to online and facilities were closed.

63.     Defendant's practice of failing to provide reimbursements for tuition and Mandatory Fees despite the materially different product that it provided, and the reduced benefits associated with the fees, as alleged herein, violates generally accepted principles of business conduct.

## CLASS ACTION ALLEGATIONS

64.     Plaintiff brings this case individually and, pursuant to FRCP 23, on behalf of the class defined as:

> All enrolled students at Fordham's New York Campuses during the Spring 2020 who paid tuition and/or the Mandatory Fees ("Class").

65.     Plaintiff reserves the right to modify or amend the definition of the Class if

---

[16] https://web.archive.org/web/202000329062042/https://www.fordham.edu/coronavirus (last accessed July 11, 2023).

necessary, before this Court determines whether certification is appropriate.

66.    This action has been brought and may properly be maintained on behalf of the Class proposed herein under the criteria of FRCP and other statutes and case law.

67.    The Class is so numerous that joinder of all members is impracticable.

68.    Although the precise number of Class members is unknown to Plaintiff, Fordham has reported that an aggregate of 16,000 or more undergraduate and graduate students were enrolled for the 2019-2020 school year.

69.    The names and addresses of all such students are known to the University and can be identified through the University's records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

70.    The questions here are ones of common or general interest such that there is a well-defined community of interest among the class members. These questions predominate over questions that may affect only individual members of the Class because Fordham has acted on grounds generally applicable to the class.  Such common legal or factual questions include, but are not limited to:

> a.  Whether Fordham accepted money from Plaintiff and the Class members in exchange for the promise to provide an in-person and on-campus live education, as well as certain facilities and services throughout the semester affected by Covid-19;
> b.   Whether Defendant breached its contracts with Plaintiff and the members of the Class by failing to provide them with an in-person and on-campus live education after March 9, 2020;
> c.  Whether Defendant breached its contracts with Plaintiff and the Class by failing to provide the services and facilities to which the Mandatory Fees pertained after mid-March 2020; and
> d.  Whether Defendant breached the covenant of good faith and fair dealing with Plaintiff and the members of the Class by failing to provide them with an in-person and on-campus live education after March 9, 2020;
> e.  Whether Defendant breached the covenant of good faith and fair dealing

with Plaintiff and the members of the Class by failing to provide the services and facilities to which the Mandatory Fees pertained after mid-March 2020;

f. Whether Defendant is unjustly enriched by retaining all of the tuition and Mandatory Fees during the time when Fordham was closed, and Plaintiff and the members of the Class were denied an in-person and on-campus live education and access and the services and facilities for which the Mandatory Fees were paid; and

g. The amount of damages and other relief to be awarded to Plaintiff and the Class members.

71. Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff and the other Class members each contracted with Defendant for it to provide an in-person and on-campus live education, services, and facilities that the University stopped providing in mid-March for which Plaintiff and Class members paid.

72. Plaintiff is a more than adequate class representative. In particular:

a) Plaintiff is committed to the vigorous prosecution of this action on behalf of himself and all others similarly situated and has retained competent counsel experienced in the prosecution of class actions and, in particular, class action litigation;

b) because his interests do not conflict with the interests of the other Class members who he seeks to represent;

c) no difficulty is anticipated in the management of this litigation as a class action; and

d) Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

73. Class members' interests will be fairly and adequately protected by Plaintiff and his counsel.

74. It is impracticable to bring members of the Class's individual claims before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that

might not be practicable to pursue individually, substantially outweigh any difficulties that may

arise in the management of this class action.  A class action is superior to other available methods

for the fair and efficient adjudication of this litigation.  The damages or financial detriment suffered

by individual Class members are relatively small compared to the burden and expense of individual

litigation of their claims against the University. It would, thus, be virtually impossible for the Class,

on an individual basis, to obtain effective redress for the wrongs committed against them.

Furthermore, individualized litigation would create the danger of inconsistent or contradictory

judgments arising from the same set of facts.  Individualized litigation would also increase the

delay and expense to all parties and the court system from the issues raised by this action.  By

contrast, the class action device provides the benefits of adjudication of these issues in a single

proceeding, economies of scale, and comprehensive supervision by a single court, and presents no

unusual management difficulties under the circumstances.

75.     Plaintiff also seeks class certification for injunctive and declaratory relief under

FRCP, at the appropriate juncture.

### FIRST CLAIM FOR RELIEF
### BREACH OF CONTRACT AS TO THE MANDATORY FEES
### (On Behalf of the Class)

76.      Plaintiff repeats and realleges the factual allegations above as if fully alleged

herein.

77.     Plaintiff brings this claim individually and on behalf of members of the Class.

78.     Plaintiff asserts that the covenants required by Fordham are governed by implied

contract, including by their prior usage, expectations of the parties, intent of the parties, custom,

and ordinary understanding during the course of conduct.

79.     The nature of the student-University relationship was formed, as detailed above,

via all the official and standardized documents that were distributed during the critical contract formation stages relevant to students here – application, admission, enrollment, registration, and payment.

80.    Fordham conveyed nature of the Mandatory Fees through those documents, including on its public documents and websites.

81.    While there is no single integrated document, upon information and belief, Plaintiff paid the Mandatory Fees for access to in-person services and access to Fordham's campus, services, and facilities.  For example, the general fee was used to provide and support campus-based services and access, the technology fee was used to provide and support campus based technologies and the lab fees were used to provide and support various on campus laboratories and resources.

82.    Further Fordham has provided access to various services and facilities to its students for over 180 years, up until the Spring 2020 semester. Based on Fordham's past course of conduct Plaintiff and the members of the class expected to receive access to Fordham's campus, services and facilities.

83.    The University has breached its contract with Plaintiff and the Class by failing to provide the promised in-person and on-campus services, facilities, and access to which the Mandatory Fees pertained throughout the semesters affected by Covid-19. Yet Fordham has retained monies paid by Plaintiff and the Class for a live in-person education and access to these services and facilities during these semesters.

84.    Plaintiff and the members of the Class have therefore been denied the benefit of their bargain.

85.    Plaintiff and members of the Class have performed all the obligations on them

pursuant to their agreement – including by making such payments or securing student loans or scholarships to pay for such education.

86.　　Plaintiff and the members of the Class have suffered damage as a direct and proximate result of the University's breach in the amount of the prorated portion of the Mandatory Fee they each paid during the portion of the semesters affected by Covid-19 in which in-person classes were discontinued and facilities were closed by the University.

87.　　Fordham should return such portions of the Mandatory Fees to Plaintiff and each Class Member

## SECOND CLAIM FOR RELIEF
## BREACH OF CONTRACT AS TUITION
### (On Behalf of The Class)

88.　　Plaintiff incorporates the forgoing allegations by reference as if fully set forth herein.

89.　　Plaintiff and the Class Members entered into an implied contract as to tuition, wherein Plaintiff paid the tuition, and Defendant agreed to provide in-person and on-campus services and access – among the other covenants.

90.　　There is no single integrated document that reflects each one of Fordham's covenants and promises as part of the student-University agreement.

91.　　Fordham makes no express promise to provide any specific service – not instruction, not progress towards a degree, and not access to campus.

92.　　Instead, all of Fordham's covenants are implied – and reasonably understood by students and the University.

93.　　The covenants and promises required by the parties as part of the student-University contract – namely those obligated by Fordham – were detailed and conveyed over the course of numerous documents and materials that were exchanged through the application, acceptance,

enrollment, registration, and payment processes, including policy documents and standardized documents.

94.    Many of those documents are standardized or policy documents like acceptance letters, course catalogs, handbooks, bulletins, the enrollment acknowledgment, websites and other documents and materials, which conveyed the respective obligations of the parties, including the obligations on Fordham to provide on-campus services to students like Plaintiff.

95.    Students, like Plaintiff, also reviewed other documents, materials, and representations from Fordham reflecting the nature of the services and relied upon past experiences and past performance to form a reasonable expectation of the service they would receive.

96.    For example, the 2017-2018 Undergraduate Bulletin contains over 260 references to "campus", over 380 references to "classroom", over 490 references to "community" and over 150 references to "hands-on" thereby reinforcing the foundational understanding that Fordham was a campus-based institution with access to a suite of on-campus and in-person services, facilities, and activities, as well as the Fordham community.

97.    Visual images and representations of student life at Fordham conveyed these same foundational understandings, including images of campus, images of students working together, images of events and facilities, images of campus buildings, images of campus labs, images of campus-based technologies, and other visuals.

98.    These, among other, standardized documents and policies regularly reflected that Fordham would provide access to campus, its classrooms, facilities, services, and other in-person, campus-based services.

99.    Students like Plaintiff that paid the tuition reasonably expected to receive campus, community, and in-person access when they enrolled at Fordham and registered for classes in the

Spring 2020 semester.

100.    Under the implied contract, Plaintiff and the Class Members registered for on-campus, in-person courses and access to campus and its facilities.

101.    It was the reasonable expectations of Plaintiff and Class Members that Defendant would provide them with on-campus, as opposed to online, use of Defendant's facilities and services in accordance with Defendant's usual and customary practice of providing on-campus services, facilities, and experiences.

102.    Fordham has provided access to campus for over 180 years to its students, except for those enrolled during the Spring 2020 semester. Based on Fordham's past course of conduct the parties reasonably expected that the product Plaintiff and members of the class were paying for included on-campus access and services.

103.    Plaintiff and Class Members accepted and intended to use and enjoy Defendant's on-campus community, services, and facilities.

104.    Plaintiff and the Class Members have fulfilled all expectations by registering and pay for access to on-campus facilities and services.

105.    Fordham and its staff expected the University to provide access to campus, its labs, its libraries, its technologies, classroom instruction, face-to-face interactions, and all the other campus services that are traditionally available on Fordham's campus.

106.    Plaintiff and the Class Members have paid Defendant for all Spring 2020 term financial assessments.

107.    However, Defendant breached the implied contract when it failed to provide those on-campus, services, experiences, and access, and have not otherwise performed as required by the implied-in-fact contract between Plaintiff and the Class Members and Defendant and decided

to retain the fees paid for those services. Defendant moved all classes to online classes and restricted or eliminated Class Members' ability to access university facilities. In doing so, Defendant have deprived and continue to deprive Plaintiff and the Class Members from the benefit of their bargains with Defendant.

108.    Plaintiff and the Class Members have been damaged as a direct and proximate result of Defendant's Breach. The online product provided by Defendant are objectively different from, worse than, and less valuable than the on-campus product for which the parties entered into an implied-in-fact contract.

109.    Plaintiff and the Class Members are entitled to damages, including but not limited to a partial refund of tuition for services not provided and the market value of the services actually provided.

### THIRD CLAIM FOR RELIEF
### UNJUST ENRICHMENT
### (On Behalf of Plaintiff and the Class)

110.    Plaintiff incorporates the foregoing allegations by reference as if fully set forth herein.

111.    In the alternative, Plaintiff brings this claim for unjust enrichment individually and on behalf of the members of the Class.

112.    Plaintiff prepaid for the Spring 2020 semester but did not receive the full expectations and scope of services that Fordham provides and that it budgeted to provide.

113.    Fordham has benefited by the COVID pandemic by forcing the entire economic costs onto its students during the Spring 2020 semester, while providing less services, by obtaining government aide, by earning interest on the monies pre-paid by Plaintiff, and by otherwise failing to use Plaintiff's monies for providing educational services during the Spring 2020 semester.

114.    Defendant conveyed in writing in documents and in other materials to Plaintiff and similarly situated individuals that it would provide in-person educational services, opportunities, and experiences.

115.    Defendant conveyed in writing in documents and in other materials that Plaintiff and similarly situated individuals would have access to the services for which they paid the Mandatory Fees.

116.    Defendant has retained the benefits of the amount of tuition and Mandatory Fees that Plaintiff and similarly situated individuals have provided – without providing the benefits that Plaintiff expected – as those services were marked, conveyed, and suggested.

117.    For example, Defendant failed to provide Plaintiff and Class Members access to any on-campus facility after in or around March 9, 2020. Yet Defendant assessed Plaintiff with tuition and Mandatory Fees that covered the cost of upkeep and maintenance of such facilities, services, costs, and expenses.

118.    Plaintiff was not able to access such facilities or services remotely.

119.    Plaintiff paid tuition and Mandatory Fees with the expressed understanding that such costs included the in-person classes, services, opportunities, and experiences that Fordham have previously marketed, promoted, or made available prior to Covid-19.

120.    Upon information and belief, Plaintiff paid monies to Fordham that went toward buildings, technologies, labs, libraries, and other campus services that were unavailable to him during the Spring 2020 semester.

121.    Fordham utilized Plaintiff and Class members' monies to pay for campus-based services, yet Plaintiff and Class members were unable to use those services during their Spring 2020 semester.

122.    Defendant has been unjustly enriched by Plaintiff's payment of tuition and Mandatory Fees.

123.    Despite not being able to provide such services, Fordham failed to provide reimbursements for tuition and fees despite the diminished services that it previously provided, and the reduced benefits associated with the Mandatory Fees.

124.    Plaintiff and members of the Class have sustained monetary damages as a result of each of Defendant's breaches of the covenant of good faith and fair dealing.

125.    Defendant's act was unjust for them to keep money for services they did not render.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that judgment be entered in favor of Plaintiff and the Class against Defendant as follows:

(a)    For an order certifying the Class under the FRCP and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

(b)    For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(c)    For compensatory damages in an amount to be determined by the trier of fact;

(d)    For an order compelling disgorgement of the ill-gotten gains derived by Defendant from its misconduct;

(e)    For an order of restitution and all other forms of equitable monetary relief;

(f)    For an order awarding Plaintiff's reasonable attorneys' fees, costs, and

expenses;

(g)     For an order awarding pre- and post-judgment interest on any amounts awarded; and,

(h)     For an order awarding such other and further relief as may be just and proper, including injunctive relief and declaratory relief.

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: July 11, 2023                    Respectfully submitted,

/s/Anthony M. Alesandro
Anthony M. Alesandro, Esq.
Michael A. Tompkins, Esq.
Jeffrey K. Brown, Esq.
**LEEDS BROWN LAW, P.C.**
One Old Country Road, Suite 347
Carle Place, NY 11514
(516) 873-9550
aalesandro@leedsbrownlaw.com
mtompkins@leedsbrownlaw.com
jbrown@leedsbrownlaw.com

*Counsel for Plaintiff and Proposed Class*